UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RAY STEPHENS and )
ANGIE STEPHENS )
                                )    Case No. 1:12-cv-53
v. )
                                )    JUDGE CARTER
BANK OF AMERICA, CORP. a/k/a )
BANK OF AMERICA, N.A., )
WILSON & ASSOCIATES, PLLC, and )
DAVID M. GRAHAM )

MEMORANDUM

I. Introduction

Defendant Wilson & Associates, PLLC (Wilson & Associates) and defendant Bank of America, Corp. a/k/a Bank of America, N.A. have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). [Docs. 4 and 6, respectively). This action arises from defendants' foreclosure on the Bank of America Corp.'s security interest in the plaintiff's residence. In addition to several claims brought under state law, plaintiffs allege defendants have violated the Truth in Lending Act (TILA), 15 U.S.C. § 1639[1] and the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692(e), by providing misrepresentations about the foreclosure sale of their residence and by conducting the foreclosure sale despite representations that the foreclosure sale was on hold. For the reasons stated herein, the Court concludes plaintiffs have failed to state a claim under TILA or the FDCPA. The Court will decline to exercise supplemental jurisdiction over the state law causes of action, and the Court will REMAND the remaining state law claims to the Bradley County Circuit Court.

---

[1] Plaintiffs erroneously refer to 15 U.S.C. § 1639 as part of the Fair Debt Collection Practices Act. However, 15 U.S.C. § 1639 is part of the Truth in Lending Act, 15 U.S.C. § § 1601 *et seq*. *See Mills v. EquiCredit Corp.,* 172 Fed. Appx. 652 (6th Cir. 2006).

1

II. Standard of Review

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is meant to test the sufficiency of the complaint; it does not resolve the facts of the case. *Thielen v. GMAC Mortg. Corp.*, 671 F.Supp.2d 947, 950 (E.D. Mich. 2009); *Cox v. Shelby State Community College*, 48 Fed. Appx. 500, 503 (6th Cir. Sept. 24, 2002) (unpublished); *Metz v. Supreme Court of Ohio*, 46 Fed. Appx. 228, 233 (6th Cir. Aug. 19, 2002) (unpublished). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' *Bell Atlantic v. Twombley,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). In determining whether a party has set forth a claim in his complaint for which relief can be granted, all well-pleaded factual allegations contained in the complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This tenet does not apply to legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* More than "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are required to state a claim. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 696 (brackets original)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 557 (2007)). The complaint must state "a plausible claim." *Id.* at 679. Plausibility has been defined by the Supreme Court in the following manner:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Bell Atlantic Corp. v. Twombley*,] 550 U.S. 544, 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement,"

2

> but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Id.* at 678. In determining whether a complaint states a plausible claim for relief, the Court may draw on its judicial experience and common sense. *Id.* at 1950. Well-pleaded facts that permit the court to infer no more than a mere possibility of misconduct will not permit a complaint to survive a motion to dismiss. *Id.*

### III. Relevant Alleged Facts

Plaintiffs' complaint alleges the following: On August 14, 2004, plaintiffs purchased a home in Charleston, Tennessee by executing two deeds of trust, one in the amount of $220,000 and another in the amount of $41,250. The deed of trust in the amount of $220,000 (the Deed of Trust) was originally held by Countrywide Home Loans, Inc. On July 15, 2011, the Deed of Trust was assigned to BAC Home Loan Servicing, LP, formerly known as Countrywide Home Loan Servicing, LP. BAC Home Loan Servicing, LP merged into Bank of America, N.A. (BANA) which is a subsidiary of defendant Bank of America Corp.[2]

Sometime in 2010, before the assignment of the Deed of Trust to BAC Home Loan Servicing, LP (which allegedly merged into BANA), plaintiffs fell behind in their payments on the notes securing the two deeds of trust. Wilson & Associates, a law firm acting on behalf of BANA, sent plaintiffs a notice, dated November 10, 2010, of right to a non-judicial foreclosure on the Deed of Trust. Plaintiffs then applied through BANA for a loan assistance program. BANA denied this application, and the plaintiffs filed another such application on March 8, 2011.

---

2 In their second amended complaint, plaintiffs frequently refer to "BANA" but do not identify the entity for which "BANA" is an acronym. The undersigned assumes "BANA" is an acronym for Bank of America, N.A.

On March 15, 2011, Wilson & Associates sent a second notice of a non-judicial foreclosure scheduling a foreclosure sale on April 11, 2011. Plaintiffs contacted BANA and Wilson & Associates, and both informed plaintiffs the sale would be postponed to May 11, 2011.

On May 2, 2011, plaintiffs contacted David at Wilson & Associates who told plaintiffs the sale had been postponed, that Wilson & Associates had closed their file on plaintiffs' property, and it appeared plaintiffs would receive a loan modification. Plaintiffs contacted BANA which confirmed the sale had been postponed. On April 4, 2011, plaintiffs' financial circumstances improved, and they asked for a reinstatement calculation of their payments which BANA sent. Plaintiffs were prepared to reinstate their loan if their application for a loan modification was denied.

On May 20, 2011, BANA sent plaintiffs a letter stating their request for a loan modification had been denied. Plaintiffs contacted BANA, and Emily told them their conventional modification was denied but the government modification was still under review. In May 2011, BANA indicated to plaintiffs that it was considering setting up trial payments. In June, plaintiffs contacted BANA which told them their government modification was still under review.

On June 13, 2011, plaintiffs contacted David at Wilson & Associates who told plaintiffs BANA had sent a referral to place the foreclosure sale on hold. Every week during June and July 2011, plaintiffs contacted BANA and were told their government loan modification application was still under review. On August 2, 2011, plaintiffs received a letter from BANA titled "Notice of Intent to Accelerate."

On September 1, 2011, Plaintiffs received another non-judicial foreclosure notice from Wilson & Associates setting a foreclosure sale on October 3, 2011. Plaintiffs contacted BANA

4

which said their loan modification was still under review and the foreclosure would be postponed. Plaintiffs were prepared to reinstate their loan if modification was denied. Thereafter, plaintiffs contacted Cory at Wilson & Associates who told them that Wilson & Associates had two files on plaintiffs' home, one open and one active.

In September 2011, plaintiffs' authorized representative contacted BANA which told him the October 3, 2011 foreclosure sale was rescheduled to November 2, 2011. The representative contacted BANA again and was told the November 2, 2011 foreclosure sale was also postponed. On October 7, 2011, Wilson and Associates were appointed Successor Trustee for the Deed of Trust. On November 1, 2011, BANA informed the plaintiffs by letter that plaintiff's original loan modification application had been denied, but, because their information had changed, they could reapply. Plaintiffs reapplied on November 15, 2011. On November 17, 2011, BANA sent plaintiffs a letter stating they did not qualify for a home loan modification.

On or about November 18, 2011, plaintiffs began receiving several foreclosure notices from Wilson & Associates setting a foreclosure sale for December 2, 2011. Plaintiffs' representative immediately contacted BANA and was assured that the December 2, 2011 foreclosure sale would be postponed pending a final review of all plaintiff's options.

BANA then sent plaintiffs a letter dated November 22, 2011. The letter stated plaintiffs were not eligible for a home loan modification but BANA was currently reviewing their information to see if there were other options available to them. The letter further stated BANA would contact them in ten days to let plaintiffs know what other options they had besides foreclosure. The letter further stated they would not lose their home during this review period, but, if they received a foreclosure notice, plaintiffs should respond to protect their rights under applicable foreclosure law. The letter also stated plaintiffs had 30 days to appeal the denial of

5

their home loan modification. As with all previous foreclosure notices, the amount of the plaintiffs' debt was not mentioned anywhere in the November 22, 2013, letter.[3]

After receiving this letter, plaintiffs' representative contacted BANA which told him the December 2, 2011 foreclosure sale had been postponed. Nevertheless, on December 2, 2011, a representative of Wilson & Associates sold plaintiffs' residence to defendant David Graham, a Tennessee resident, for $219,254.73.

## IV. Analysis

Plaintiffs' complaint as it relates specifically to their claim under the FDCPA is quite short. It states:

> 72. Plaintiffs allege that BANA and Wilson and Associates violated the [FDCPA], specifically 15 U.S.C. §1639 and 15 U.S.C. § 1692(e). Plaintiffs allege that BANA did not properly disclose to plaintiffs that the foreclosure sale would occur despite the representations in the November 22, 2011 letter from BANA. Plaintiffs further allege that Wilson and Associates provided false and misleading information to Plaintiffs and/or their representative, Warnie Shaw [,] that the foreclosure sale was on "hold." Plaintiff's [sic] further allege that Wilson and Associates used unfair practices when Wilson and Associates maintained two different files on Plaintiffs within their offices.
>
> 73. Plaintiffs allege that Defendants are subject to civil liability to Plaintiffs pursuant to 15 U.S.C. § 1640 and [sic] 1992(k). Plaintiffs request they be awarded statutory damages in an amount to be proven at trial and their attorney fees.[4]

---

3 Each of the aforementioned letters is attached as an exhibit to the plaintiffs' original complaint. The second amended complaint refers to these same letters as being attached to the second amended complaint, but the plaintiffs did not attach them when they filed the second amended complaint. The Court thinks this is an oversight and will consider the letters and other exhibits, *e.g.* the Deed of Trust, attached to the original complaint as being attached to the second amended complaint. "[D]ocument[s] attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")
4 15 U.S.C. § 1640 provides a private right of action and damages under the Truth in Lending Act (TILA), and 15 U.S.C. § 1692(k) provides a private right of action and damages under the FDCPA. Neither section defines what constitutes a violation of the TILA or the FDCPA. *See*

(Second Amended Complaint, Page ID # 258) (footnote added).

    *A. The Truth in Lending Act- 15 U.S.C. § 1639 - Disclosures*

15 U.S.C. § 1639 is part of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq*. The purpose of TILA is to promote the informed use of credit by assuring meaningful disclosure of credit terms to consumers. *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 865 (6th Cir. 2003). Section 1639 sets forth many types of disclosures a creditor must give and when and how a creditor must give them in relation to the terms of a mortgage loan. Such disclosures concern matters like interest rates, monthly payment amounts, prepayment penalties and additional fees. There are no disclosure requirements in Section 1639 relating to foreclosures. *See generally* 15 U.S.C. § 1639. Plaintiffs do not identity which of the several subsections under Section 1639 they contend defendants violated. In this case, the disclosures at issue are representations made by Wilson & Associates and BANA that the foreclosure sale would not go forward on December 2, 2011 in order that plaintiffs could continue to pursue a loan modification. These disclosures do not address the terms of the mortgage and thus do not fall within the ambit of Section 1639 -- nor do the plaintiffs so argue in their responses to defendants' respective motions to dismiss. Consequently, the Court concludes that even when considering all factual allegations in the complaint to be true, the complaint fails to state a claim for relief under TILA, 15 U.S.C. § 1639.

    *B. The Fair Debt Collection Practices Act - Section 1692e*

In order to state a claim under which relief can be granted under Section 1692e, the plaintiff must plead: (1) the defendant is a "debt collector," and (2) the defendant used false, deceptive or misleading communication or means (3) in order to collect a debt. *See* 15 U.S.C. §

---

*generally*, 15 U.S.C. § 1640 and 15 U.S.C. § 1692(k). They are not at issue in this motion to dismiss.

1692e ("A debt collector shall not use any false, deceptive, or misleading representations or means in connection with the collection of any debt."[5]). "Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Defendants argue that Section 1692e does not apply because the alleged misrepresentations were not made in connection with an attempt to collect a debt; rather, the alleged misrepresentations and offending conduct was made in connection with their foreclosure on a security interest.[6] After examining this issue carefully, the Court concludes the defendants are correct.

The complaint alleges both BANA and Wilson & Associates made promises and representations which they did not keep *in connection with the foreclosure of their home*, not in connection with an attempt to collect the outstanding debt due on the Deed of Trust. BANA explicitly promised not to foreclose on the plaintiffs' house during the ten day period after

---

[5] The next sentence of Section 1692e states, *[w]ithout limiting the general application of the foregoing*, the following conduct is a violation of this section…." (Emphasis added). Section 1692e continues with 16 different examples of conduct which violates Section 1692e. The plaintiffs have not identified nor do they argue that any of these 16 examples is conduct engaged in by defendants. Consequently, defendants argue, plaintiffs' complaint is too vague and fails to state a claim under Section 1692e. However, as the statute indicates, the 16 item list is not inclusive and the examples themselves do not limit the general application of Section 1692e.

[6] BANA also argues it cannot be a debt collector because it was only the loan servicer. However, according to the complaint, the loan originator, Countrywide Home Loans, Inc., assigned all rights, title, and interest to BAC Home Loans Services, LP, which was later merged into defendant BANA, on July 15, 2011, *after* plaintiffs were in default on their home loan. *See Assignment of Deed of Trust*, Page ID ## 33-35. Under the FDCPA, an entity that did not originate the debt in question but acquires it and attempts to collect on it after the debt is in default, is a debt collector for purposes of the FDCPA. *Bridge v. Ocwen*, 681 F.3d 355, 359 (6th Cir. 2012)

November 22, 2011 in order to investigate if plaintiffs had any other options besides foreclosure. BANA also implicitly promised not to foreclose on plaintiffs' house in the thirty day period after November 22, 2011 because it told plaintiffs they would have thirty days to appeal the denial of the loan modification application. A thirty day window to appeal would be a meaningless opportunity if plaintiffs' house were to be sold at foreclose during this time. Further, according to plaintiffs, Wilson & Associates indicated the foreclosure sale was on "hold." Plaintiffs further allege that despite these representations, defendants sold their home at a foreclosure sale during the period of time that defendants had indicated they would not.

While selling a house at a foreclosure sale in order to recoup monies due on a mortgage in default and seeking to collect a monetary debt due on a mortgage in default without foreclosing on the house may seem, for all practical purposes, to be substantially the same conduct, the FDCPA treats foreclosure on a security interest and collection of monetary debts differently. This distinction is delineated in the FDCPA's definition of a debt collector. "Debt collector" is defined by the FDCPA in relevant part as:

> … any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. … *For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.*

15 U.S.C. § 1692a(6) (emphasis added) (footnote added). According to BANA and Wilson & Associates, based on the definition of debt collector under Section 1692a(6), it can be a "debt collector" under the FDCPA only for purposes of section 1692f(6) because they were only enforcing a security interest on a debt, not attempting to collect the underlying debt itself. There is persuasive support for this argument.

9

In a well-reasoned decision in which the court canvasses the law, the district court in *Stamper v. Wilson & Associates*, 2010 WL 1408585 (E.D. Tenn. Mar. 31, 2010) (Phillips, J.) held that a law firm hired solely to institute non-judicial foreclosure proceedings was merely an enforcer of a security interest and "enforcers of security interests may not be held liable under the general provisions of the FDCPA. That is, enforcers of security interests may only be sued under 15 U.S.C. § 1692f(6)." [7] *Id.* at *5; see also* cases cited therein. As the *Stamper* Court explained after examining the definition of "debt collector" provided by Section 1692(a)(6),

> [c]ourts have held that those who enforce security interests do not qualify as "debt collectors" under the FDCPA, except for the purpose of § 1692f(6). Although Congress included within the definition of "debt collectors" those who enforce security interests, it limited this definition only to the provisions of § 1692f(6). As the Sixth Circuit has explained, "[s]uch a purposeful inclusion for one section of the FDCPA implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA." *Montgomery v. Huntington Bank,* 346 F.3d at 693, 700 (6th Cir.2003) (internal citations omitted).

*Id.* at *3 - *4. The *Stamper* Court further stated,

> The issue then is the following: are law firms that initiate non-judicial foreclosure proceedings collecting a debt (and therefore subject to the general provisions of the FDCPA, such as 15 U.S.C. § 1692e), or are they enforcing a security interest (and therefore only subject to 15 U.S.C. § 1692f(6))? While the Sixth Circuit has not addressed this issue, the majority of courts hold that law firms in this situation are not liable under the general provisions of the FDCPA. *See Maynard v. Cannon,* 2008 WL 2465466, at *4 (D.Utah. June 16, 2008) (where evidence showed that defendant attorney was hired for limited purpose of non-judicially foreclosing a deed of trust, and plaintiff offered no evidence as to the frequency of defendant's security enforcement or debt

---

[7] 15 U.S.C. § 1692f(6) provides:
 A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
**(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;
**(B)** there is no present intention to take possession of the property; or
**(C)** the property is exempt by law from such dispossession or disablement.

10

collection practices, defendant's activities fell outside the FDCPA's general definition of "debt collector"); *Chomillo v. Shapiro, Nordmeyer & Zielke, LLP,* 2007 WL 2695795, at *6 (D.Minn. Sept.12, 2007) (holding that a law firm execut[ing] a security interest rather than collecting a debt … thus fell outside the ambit of the FDCPA except for the provisions of § 1692f(6)); *Acosta v. Campbell,* 2006 WL 3 804729, at *4 (M.D.Fla. Dec. 22, 2006) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA"); *Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1210 (D.Or.2002) (actions taken by attorneys as part of foreclosure of trust deed "may not be challenged as FDCPA violations"). In other words, the majority of courts hold that law firms that initiate non-judicial foreclosure proceedings are not collecting a debt, but rather, enforcing a security interest.

*Stamper*, 2010 WL 148585 *5. Thus, it would seem clear that foreclosing on a security interest is not actionable under Section 1692e because it is not a "means" made "in connection with the collection of any debt." 15 U.S.C. § 1692e. However, though neither party cited this case, this analysis would not be complete without a discussion of *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), in which the Sixth Circuit considered when a communication is made in connection with the collection of a debt for purposes of Section 1692e.

In *Grden*, the plaintiff owed a medical provider for treatment of an infection. The debt was referred to a collections agency which hired defendant law firm to collect the debt. The law firm sued the plaintiff for the outstanding debt. The plaintiff then called the law firm to verify his account balance. A law firm employee erroneously told him he owed more than he actually did. The plaintiff sued the law firm for violating the FDCPA by, *inter alia,* making false statements about his outstanding balance. The law firm argued that the incorrect statements were not actionable under Section 1692e because they were not made "in connection with the collection of any debt." 15 U.S.C. § 1692e. Relying on a Seventh Circuit case, *Gburek v. Litton Serv. LP,*, 614 F.3d 380 (7th Cir. 2010), the *Grden* Court stated,

> for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. *See id.* at 385 ("a communication made specifically to induce the debtor to settle her debt will

11

sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. *See, e.g., id.* at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection.

*Grden,* 643 F.3d at 173. The *Grden* Court then concluded that because the *plaintiff* had requested the balance, the erroneous statements "were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely" and "[t]hus, under the circumstances present here, a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden." *Id.* at 173.

In the instant case, plaintiffs' complaint indicates BANA sent a letter to the plaintiffs on November 22, 2011 stating plaintiffs had not qualified for a loan modification but that BANA would review their financial information in the next ten days to determine if plaintiffs had some option besides foreclosure. The letter further indicated the plaintiffs would not lose their home during this time; nevertheless, Wilson & Associates, who had been hired by BANA to foreclose on plaintiffs' home, sold the home on the last day of the ten day review period. One could argue that BANA's representations that it would consider other options for plaintiffs besides foreclosure during the ten day period was "animated" by a desire to collect the outstanding debt rather than foreclose on the home. However, the focus of plaintiffs' FDCPA claim is not that BANA made misrepresentations that it would forebear from foreclosure during a ten day period in order to collect Plaintiffs' debt. Rather, the gravamen of this FDCPA claim is that BANA foreclosed during a time when it said it would not. As plaintiffs argue in their response to BANA's motion to dismiss, "BANA violated the Fair Debt Collection Act by not properly disclosing to Plaintiffs that the foreclosure sale will [sic] occur despite representations in the

12

November 22, 200 [sic] letter that Plaintiffs would not lose their home during the 10-day review period." (Plaintiffs' Response, Page ID #155).  Since foreclosure of a security interest is not covered under Section 1692e, plaintiffs' complaint fails to state a claim under that section.

As to plaintiffs' claim that Wilson & Associates violated Section 1692e by maintaining two files on their home, the Court also concludes this claim must fail because there is nothing in the Plaintiffs' Second Amended Complaint to indicate that Wilson & Associates did anything more than attempt to foreclose on the plaintiffs' home.

Finally, in its response brief to BANA's motion to dismiss, plaintiffs argue they have stated a claim under Section 1692f(6)(A).  Section 1692f(6)(B) prohibits a debt collector from '[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if… there is no present intention to take possession of the property…." 15 U.S.C. § 1692f(6)(B).  For purposes of Section 1692f(6), a debt collector includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).  Neither Section 1692f(6) nor its language is mentioned in the plaintiffs' complaint.  Importantly, plaintiffs have not moved to amend their complaint to add this claim.  A close reading of the complaint, including all its factual allegations, does not give defendants fair notice that plaintiffs intended to assert a claim under Section 1692f(6), and the Court consequently finds no such claim has been asserted.

*C. Remand to State Court*

Diversity jurisdiction pursuant to 28 U.S.C. § 1332 is lacking in this case because both plaintiffs and defendants Wilson & Associates and David M. Graham are citizens of Tennessee. *See* 28 U.S.C. § 1332.  Several state law claims remain in this action.  While this Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), the Court has

13

discretion to decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c). The Sixth Circuit has held "when all federal claims have been dismissed before trial, the best course is to remand the state law claims." *Thurman v. DaimlerChrysler*, 397 F.3d 352, 359 (6th Cir. 2004) (citations omitted); *accord Burke v. Bradley County Government*, 2011 WL 1306766 *4 (E.D. Tenn. April 1, 2011). Such is the case here.

### V. Conclusion

Accordingly, defendants' respective motions to dismiss will be GRANTED IN PART in that all claims brought by plaintiffs under the Truth in Lending Act and the Fair Debt Collection Act will be DISMISSED with prejudice. Defendants' respective motions to dismiss will be DENIED IN PART in that plaintiffs' state law claims will not dismissed. Instead, this action with its remaining state law claims will be REMANDED to the Chancery Court of Bradley County, Tennessee. As no further matters remain for adjudication, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case. An appropriate order shall be entered.

ENTER.

S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE